UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANICE MARCELLA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BANKNORTH, N.A.,<br>MASSACHUSETTS, DONA BECK,<br>GAIL HAMEL and DAVID CLARK,<br><br>　　　　Defendants. | Docket No. 04-30217 MAP |

## DEFENDANTS' APPENDIX OF UNREPORTED CASES

1.  Avery v. PTP, Inc.,
    1998 Mass Super. LEXIS 638 (Mass. Super. Ct. Nov. 24, 1998).

2.  Burchill v. Unumprovident Corp.,
    2003 U.S. Dist. LEXIS 11445 (D. Me. June 27, 2003).

3.  Campbell v. Mitre Corp.,
    2001 U.S. Dist. LEXIS 13258 (D. Mass. June 1, 2001).

4.  Cuddi v. Gallery Gift Shoppes,
    2003 Mass. Super. LEXIS 405 (Mass. Super. Ct. Oct. 24, 2003).

5.  Riebold v. E. Cas. Co.,
    1997 Mass. Super. LEXIS 316 (Mass. Super. Ct. June 4, 1997).

Respectfully submitted,

BANKNORTH, N.A., DONA BECK,
GAIL HAMEL AND DAVID CLARK,

By their attorneys,

_____
Sara Goldsmith Schwartz (BBO #558972)
Shelley A. Costantino (BBO #640651)
SCHWARTZ HANNUM PC
11 Chestnut Street
Andover, MA  01810
(978) 623-0900


Dated: February 11, 2005
Appendix of Unreported Cases.doc

## CERTIFICATE OF SERVICE

    I hereby certify that on February 11, 2005, I served a copy of the foregoing document on the Plaintiff, by mailing a copy thereof on that date by Certified Mail, Return Receipt Requested, to:

> Richard A. Mulhearn, Esq.
> Law Offices of Richard A. Mulhearn
> 41 Elm Street
> Worcester, MA 01609

                                                            _____
                                                            Shelley A. Costantino

Dated: February 11, 2005

Debra Avery v. PTP, Inc. et al. n1

n1 PTP, Inc. dba Fiber Clean of New England aka Excel Management, George Hickman, James B. Jones, Richard Taylor and Art Omans.

94-1225-D

SUPERIOR COURT OF MASSACHUSETTS, AT MIDDLESEX

1998 Mass. Super. LEXIS 638

November 20, 1998, Decided
November 24, 1998, Filed

**DISPOSITION:** [*1] Defendants' Motion for Summary Judgment with respect to Counts I and II ALLOWED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant co-workers moved to dismiss plaintiff employee's sexual harassment claim against defendant employer on the grounds that they were not named as respondents in the employee's charge with the Massachusetts Commission against Discrimination.

**OVERVIEW:** Failure to file a timely complaint with the Massachusetts Commission against Discrimination (MCAD) against a defendant prior to filing suit in superior court barred a claim of discrimination against the defendant. The MCAD charge put one of the co-worker's conduct squarely in issue, but it was unclear whether he had notice of the charge and an opportunity to conciliate it. The employee offered no evidence that the co-worker had the opportunity to conciliate the charge, and could not defeat summary judgment with respect to her discrimination claim against him. It could be reasonably inferred that the other co-worker, as president of the company, had constructive notice of the MCAD charge. The court could also reasonably infer from the president's position that he had an opportunity to participate in the conciliation process. However, because the MCAD charge did not mention him, his conduct was not put in issue. The employee could not, therefore, maintain her discrimination claims against him.

**OUTCOME:** The motion to dismiss was granted.

**CORE TERMS:** notice, conciliate, summary judgment, reasonably infer, sexually harassed, civil action, conciliation, lawsuit, constructive notice, unlawful practice

### LexisNexis(TM) Headnotes

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*

[HN1]In ruling upon a motion to dismiss, the court must take the factual allegations of the complaint, as well as inferences which can be drawn therefrom in plaintiff's favor, as true. The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. A complaint is not subject to dismissal if it would support relief under any theory of law.

*Labor & Employment Law > Discrimination > Sexual Harassment > Enforcement*

[HN2]See Mass. Gen. Laws ch. 151B, § 5.

*Labor & Employment Law > Discriminatior Sexual Harassment > Enforcement*

[HN3]Failure to file a timely complaint Massachusetts Commission against Di against a defendant prior to filing su Court bars a claim of discriminat defendant. A plaintiff's failure to sa requirements of Mass. Gen. Laws the dismissal of the complaint.

*Labor & Employment J Sexual Harassment > Er*

[HN4]Mass. Gen. L
Code tit. 804, § 1
each party
discrimination
Laws ch. 1
against D
and set
gives
to

*Lab
Sexual*

[HN5]Massachusetts appellate courts have not decided whether a plaintiff's failure to name individual respondents on the Massachusetts Commission against Discrimination (MCAD) charge is an absolute bar to filing a civil action against those respondents. Superior court judges have either strictly construed the identification requirement, or have applied the test set by federal courts. Federal courts have concluded that, if faced with this question, the supreme judicial court would not preclude the later civil action if the defendant's conduct was at issue in the MCAD charge and if the defendant had notice of and an opportunity to conciliate the charge.

**JUDGES:** Stephen E. Neel Justice of the Superior Court.

**OPINIONBY:** STEPHEN E. NEEL

**OPINION:** MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff Debra Avery ("Avery") commenced this action against her former employer and former co-workers, claiming that they sexually harassed her in violation of G.L.c. 151B. Defendants George Hickman ("Hickman") and James B. Jones ("Jones") move to dismiss, or in the alternative, for summary judgment, on the grounds that they were not named as respondents in plaintiff's charge with the Massachusetts Commission against Discrimination ("MCAD"). n2 For the foregoing reasons, the defendants' motion is allowed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n2 Shortly after the hearing on the motions, defendant Jones filed a suggestion of bankruptcy and the action was stayed, by order of the Court, on October 15, 1997. That stay has this date been lifted, and the case restored to the "D" Session.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*2]
BACKGROUND

In December of 1992, plaintiff filed a "Charge of Discrimination" with MCAD, alleging that she had been sexually harassed in her workplace. In the charge form, Avery listed only her employer, PTP, Inc. ("PTP"), in the section identifying the "employer who discriminated against me." The charge did not name either Hickman or Jones as respondents. In the charge's summary, Avery complained that Hickman sexually harassed her. The charge does not mention Jones, who was PTP's president at the time of the alleged misconduct. MCAD investigated Avery's allegations and issued a Probable Cause Finding. In 1994, Avery brought this action against PTP, Jones, Hickman, and others. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n3 The complaint includes the following claims against Jones and Hickman: violation of G.L.c. 151B against all defendants (Count I); violation of G.L.c. 151B against Jones (Count II); violation of the Massachusetts Equal Rights Act, G.L.c. 93, 102 against all defendants (Count III); intentional infliction of emotional distress against all defendants (Count IV); assault and battery against Hickman (Count V); violation of G.L.c. 214, 1(c) against all defendants; violation of G.L.c. 12, 11I against all defendants (Count VII); intentional interference with employment relationship against Hickman (Count VIII); estoppel against all defendants (Count X); and injunctive relief against all defendants (Count XIII).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*3]

DISCUSSION

[HN1]
In ruling upon a motion to dismiss, the court must take the factual allegations of the complaint, as well as inferences which can be drawn therefrom in plaintiff's favor, as true. *Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429, 583 N.E.2d 228 (1991),* and cases cited. The complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Nader v. Citron, 372 Mass. 96, 98, 360 N.E.2d 870 (1977),* quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* A complaint is not subject to dismissal if it would support relief under any theory of law. *Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89, 390 N.E.2d 243 (1979).*

[HN2]
G.L.c. 151B, 5 reads in pertinent part:

Page 2

Any person claiming to be aggrieved by an alleged unlawful practice or alleged violation . . . may, by himself or his attorney, make, sign and file with the commission a verified complaint in writing *which shall state the name and address of the person, employer, labor organization or employment agency alleged* [*4] *to have committed the unlawful practice complained of* . . . which shall set forth the particulars thereof and contain such other information as may be required by the commission.

(Emphasis added.) [HN3]Failure to file a timely complaint with MCAD against a defendant prior to filing suit in Superior Court bars a claim of discrimination against that defendant. G.L.c. 151B. See also *Powers v. H.B. Smith Company, Inc.*, 42 Mass. App. Ct. 657, 667, 679 N.E.2d 252 (1997); *Tardanico v. Aetna Life & Casualty Company*, 41 Mass. App. Ct. 443, 444, 671 N.E.2d 510 (1996). A plaintiff's failure to satisfy the procedural requirements of G.L.c. 1512 necessitates the dismissal of the complaint. *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 586, 631 N.E.2d 555 (1994).
[HN4]
General Laws, c. 151B and 804 C.M.R. 1.03(4)(a) require plaintiff to name each party who allegedly committed the discrimination. The naming requirement of G.L.c. 151B gives the MCAD an opportunity to investigate and settle disputes before lawsuits are filed, and it gives the accused an opportunity through conciliation to extricate himself from a lawsuit. See *Hayes v. Henri Bendel, Inc.*, 945 F. Supp. 374, 379 (D.Mass. [*5] 1996).
[HN5]
Massachusetts appellate courts have not decided whether a plaintiff's failure to name individual respondents on the MCAD charge is an absolute bar to filing a civil action against those respondents. Superior Court judges have either strictly construed the identification requirement, see *Riebold v. Eastern Cas. Ins. Co., Inc.*, 1997 Mass. Super. LEXIS 316, Middlesex Civ. A. No. 97-306, 6 MASS. L. RPTR. 706 (Brassard, J.) (June 5, 1997) (dismissing discrimination claims against parties not named), or have applied the test set by federal courts, see *Albee v. New England Medical Center Hospitals, Inc.*, 1997 Mass. Super. LEXIS 205, Middlesex Civ. A. No. 96-1655E, 7 MASS. L. RPTR. 593 (Fabricant, J.) (October 30, 1997).

Federal courts have concluded that, if faced with this question, the Supreme Judicial Court would not preclude the later civil action if the defendant's conduct was at issue in the MCAD charge and if the defendant had notice of and an opportunity to conciliate the charge. See *Chatman v. Gentle Dental Center of Waltham*, 973 F. Supp. 228, 234-35 (D.Mass. 1997); *Chapin v. University of Massachusetts of Lowell*, 977 F. Supp. 72, 76 (D.Mass. 1997).

The MCAD charge put Hickman's conduct squarely in issue, [*6] but it is unclear whether Hickman had notice of the charge and an opportunity to conciliate it. Avery makes only unsupported assertions that Hickman had notice. The court could reasonably infer from the Probable Cause Finding that Hickman had notice, as the MCAD's investigation of the charge likely involved communications with Hickman. Plaintiff offers no evidence that Hickman had an opportunity to conciliate the charge, however, and accordingly cannot defeat summary judgment with respect to her discrimination claim against him. See *Chatman v. Gentle Dental Center of Waltham*, 973 F. Supp. at 236 (where it is not possible to determine from matters properly before the court whether the individual defendants had notice of and an opportunity to conciliate the charges against them at MCAD, dismissal or summary judgment for defendants is appropriate).

The court can reasonably infer that Jones, as president of PTP, had constructive notice of the MCAD charge. See *Sobotka v. Westfield Savings Bank*, 3 MASS. L. RPTR. No. 16, 346 (Sup. Ct., April 17, 1995) (constructive notice exists where unnamed party is high level management of respondent company). The court can also reasonably infer [*7] from Jones' position in PTP that he had an opportunity to participate in the conciliation process. Because the MCAD charge did not mention Jones, however, Jones' conduct was not put in issue. Plaintiff cannot, therefore, maintain her discrimination claims against Jones.

ORDER

For the foregoing reasons, Defendants' Motion for Summary Judgment with respect to Counts I and II is ALLOWED.

Stephen E. Neel

Justice of the Superior Court

Dated: November 20, 1998

CAROL BURCHILL, Plaintiff v. UNUMPROVIDENT CORPORATION, and UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendants

Civil No. 03-67-P-S

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE

2003 U.S. Dist. LEXIS 11445

June 27, 2003, Decided

**SUBSEQUENT HISTORY:** Motion to strike denied by, Summary judgment granted by Burchill v. Unum Life Ins. Co. of Am., 2004 U.S. Dist. LEXIS 15228 (D. Me., July 30, 2004)

**DISPOSITION:** [*1] Magistrate Judge's recommendation to deny motion to dismiss.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff insured filed suit pursuant to § 1132(a)(1)(B) of the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C.S. § 1132(a)(1)(B) to recover benefits allegedly due her, to enforce her rights under the plan and to clarify her rights to future benefits. Defendant insurance company moved to dismiss, contending it was not a party to the insurance policy at issue. The matter was referred to a magistrate judge.

**OVERVIEW:** The insured argued the insurance company should remain a party because it appeared to have assumed direct responsibility for processing, denying and terminating claims after it assumed full ownership of the ERISA fiduciary. The insured also alleged that the individuals who reviewed her claim were employees of the insurance company rather than the ERISA fiduciary. Although the court agreed that a parent corporation did not automatically become a plan fiduciary under ERISA, and that the insured's claim to recover benefits from a policy-funded plan was properly directed toward the actual insurer-administrator, it appeared that a viable claim could be made out against the insurance company. When the complaint was construed in accordance with the liberal notice pleading standard of Fed. R. Civ. P. 8, it could be read to incorporate a "catchall" claim under 29 U.S.C.S. § 1132(a)(3), seeking injunctive relief against the insurance company for wrongfully exerting control over its subsidiary's fiduciary duties.

**OUTCOME:** It was recommended that the insurance company's motion to dismiss be denied.

**CORE TERMS:** fiduciary, motion to dismiss, non-fiduciary, administrator, non-movant, novo, disability benefits, standard of review, discretionary authority, treating physician, fiduciary duties, actionable claim, summary judgment, automatically, discretionary, equitable, scenario, reviewer, fleshed, plainly, sketch, notice, save, exercised control, proper party, alter ego, recommend, viable

**LexisNexis(TM) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*

[HN1]A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) constitutes a threshold challenge by one party to the adequacy of one or more claims set forth in another party's complaint. The party filing such a motion contends that at least one of an opponent's claims is fundamentally flawed because the underlying allegations, even if true, fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*

[HN2]When reviewing a Fed. R. Civ. P. 12(b)(6) motion, a court is generally required to (1) treat all of the non-movant's factual allegations as true and (2) draw all reasonable factual inferences that arise from the allegations and are favorable to the non-movant. In the end, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Such indulgences are granted to the non-movant pursuant to Fed. R. Civ. P. 8, which requires of claimants only a short and plain statement of the claim sufficient to provide the adverse party with fair notice of the claim and the grounds on which it rests. Fed. R. Civ. P. 8(a)(2).

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*

[HN3]Fed. R. Civ. P. 12(b)(6) does not provide an avenue for defendants to challenge the underlying merits of a case. Notice pleading relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. At the Fed. R. Civ. P. 12(b)(6) stage, then, it is enough for a plaintiff to sketch a scenario which, if subsequently fleshed out by means of appropriate facts, could support an actionable claim.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN4]In most circumstances in an Employee Retirement Income Security Act action, a reviewing court should limit its review of a benefits determination to the evidence that was properly presented to the claims administrator.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN5]A parent corporation does not automatically become a plan fiduciary under the Employee Retirement Income Security Act of 1974.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN6]The definition of an Employee Retirement Income Security Act of 1974 fiduciary includes one who exercises any discretionary authority or discretionary control respecting management or disposition of its assets, 29 U.S.C.S. § 1002(21)(A)(1), or has authority to control and manage the operation and administration of the plan. 29 U.S.C.S. § 1102(a)(1).

**COUNSEL:** For CAROL BURCHILL, Plaintiff: JON HOLDER, HOLDER & GROVER, PORTLAND, ME, LEAD ATTORNEY.

For UNUMPROVIDENT CORPORATION, UNUMPROVIDENT EMPLOYEE, BENFITS PLAN, UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendants: PATRICIA A. PEARD, BERNSTEIN, SHUR, SAWYER, & NELSON, PORTLAND, ME, LEAD ATTORNEY.

**JUDGES:** Margaret J. Kravchuk, United States Magistrate Judge.

**OPINIONBY:** Margaret J. Kravchuk

**OPINION: RECOMMENDED DECISION ON DEFENDANT UNUMPROVIDENT CORPORATION'S MOTION TO DISMISS**

Defendant UnumProvident Corporation has filed a motion to dismiss the second amended complaint n1 alleging that it is not a proper party to this ERISA action stemming from the denial of disability benefits. I recommend that the court **DENY** the motion.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n1 In the Second Amended Complaint, Unum Life Insurance Company of America was misidentified as "The Unumprovident Employee Benefits Plan." By agreement of the parties a Third Amended Complaint has been filed reflecting the proper name of this defendant. The same counsel appears for Unum Life and moving defendant UnumProvident Corporation. In the Third Amended Complaint UnumProvident remains a named defendant. Since the Third Amended Complaint was not filed until after UnumProvident's motion to dismiss had been filed, I will simply assume that the motion is actually directed at the Third Amended Complaint which is the operative pleading in this case. The Second Amended Complaint has actually been superseded already by agreement of the parties.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*2]

**Legal Standard**

[HN1]A motion to dismiss pursuant to Rule 12(b)(6) constitutes a threshold challenge by one party to the adequacy of one or more claims set forth in another party's complaint. The party filing such a motion contends that at least one of an opponent's claims is fundamentally flawed because the underlying allegations, even if true, fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). [HN2]When reviewing a 12(b)(6) motion, a court is generally required to (1) treat all of the non-movant's factual allegations as true and (2) draw all reasonable factual inferences that arise from the allegations and are favorable to the non-movant. Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002). In the end, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). Such indulgences are granted to the non-movant pursuant to Rule 8, which

requires of claimants only a "short and plain statement of the claim" sufficient to provide [*3] the adverse party with fair notice of the claim and the grounds on which it rests. Fed. R. Civ. P. 8(a)(2); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002). [HN3]Rule 12(b)(6) does not provide an avenue for defendants to challenge the underlying merits of a case. Swierkiewicz, 534 U.S. at 512 ("Notice pleading . . . relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."). "At the Rule 12(b)(6) stage, then, it is enough for a plaintiff to sketch a scenario which, if subsequently fleshed out by means of appropriate facts, could support an actionable claim." Garrett v. Tandy Corp., 295 F.3d 94, 105 (1st Cir. 2002).

**Factual Allegations**

Carol Burchill, diagnosed as suffering from fibromyalgia by her treating physician, sought disability benefits under an insurance contract issued by Unum Life Insurance Company of America, policy number 00500848-0001. Burchill's claim for benefits was initially denied by Unum Life's claims representative. (Third Amended Complaint, P5). Burchill pursued her right to appeal, and "Defendants' [*4] 'customer care' employees" denied her appeal and closed her file. (Id., P6). Defendant UnumProvident is mentioned by name in P8, wherein it is alleged that Dr. Doane, a physician at UnumProvident, suggested that Burchill's claim failed because, in part, there had been no neuropsychological exam. (Id.) Following an exchange between Burchill's treating physician and Dr. Doane, it is alleged that "UnumProvident immediately closed Burchill's file and refused to accept any additional evidence related to her claim." n2 (Id.) According to the complaint, Unum and UnumProvident acted as they did in dealing with Burchill's case because the denial of benefits is part of an intentional plan to save money. (Id., P9.) According to Burchill, both Unum and UnumProvident put pressure on claims reviewers to deny or terminate benefits "even to people who are plainly disabled upon a review of the insurer's own records." (Id.) In the jurisdictional recitation of the complaint, Burchill indicates that she brings her action pursuant to section 1132(a)(1)(B) of the Employee Retirement Security Act of 1974 ("ERISA") to recover benefits allegedly due her, to enforce her rights under the [*5] plan and to clarify her rights to future benefits. (Third Amended Complaint, pp.1-2.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n2 The complaint is inconsistent with respect to when Burchill's file was officially "closed." Burchill alleges that the file was "closed" on two separate occasions.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

In its motion to dismiss, UnumProvident has appended a copy of the insurance policy under which Burchill claims she is entitled to benefits. The policy plainly states that it was issued by Unum Life Insurance Company of America. UnumProvident's name appears nowhere on the face of the policy. However, in the introductory paragraphs of the Third Amended Complaint Burchill alleges that "UnumProvident should . . . remain a party because it appears to have assumed direct responsibility for processing, denying and terminating claims after it assumed full ownership of Unum." (Id., p.2.) Burchill also describes UnumProvident as Unum Life's "alter ego . . . as sole owner of Unum." (Id.) Burchill finally alleges that the individuals who reviewed her claim were employees [*6] of UnumProvident rather than Unum Life. (Id.)

**Discussion**

To begin, there is some discussion in the parties' memoranda about how the standard of review may relate to the Court's determination of the instant motion. n3 I address this up front because I do not agree that the standard of review bears on the question presented in this motion, which is: whether a viable cause of action is suggested by allegations that a parent holding company of an ERISA fiduciary exercised control over the subsidiary's fiduciary obligations.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n3 Each party suggests that the long term disability policy in question might be reviewed under a de novo standard. My review of the policy revealed language reading, "When making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (Motion to Dismiss, Ex. 1, CC.FP-1, Certificate Section). This language suggests that de novo review may not be appropriate in this case. In some cases where there is a suggestion that arbitrary and capricious review applies, the issue has arisen as to whether the decision maker had been properly delegated the fiduciary's

discretionary powers, but that issue does not seem to be present in this case. See, e.g., Sidou v. UnumProvident Corp., 245 F. Supp. 2d 207 (D. Me. 2003) (involving plaintiff's contention that if the final claims reviewer was exclusively an employee of a non-fiduciary, then that non-fiduciary served as the final authority with respect to her claim and the de novo standard of review must be applied in the absence of an effective delegation from the fiduciary to the non-fiduciary).

[HN4]In most circumstances, a reviewing Court should limit its review of a benefits determination to the evidence that was properly presented to the claims administrator. See Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003) ("Even where de novo review exists under ERISA, it is at least doubtful that courts should be in any hurry to consider evidence or claims not presented to the plan administrator. Exhaustion of remedies principles point in this direction even if no deference were due to the administrator's determination, assuming always that the plan empowered the administrator to make an initial decision.") (citations omitted, emphasis added).

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*7]

The pertinent allegations in the complaint relate to UnumProvident's alleged control over plan administration and its improper motivations (in conjunction with Unum Life) to save money by denying Burchill's and others' claims. n4 Although I agree with UnumProvident that [HN5]a parent corporation does not automatically become a plan fiduciary under ERISA, Adkins v. UnumProvident Corporation, 191 F. Supp. 2d 956, 958 (M.D. Tenn. 2002) (concluding that a holding company of an ERISA fiduciary does not automatically share the subsidiary's fiduciary duties), n5 and that Burchill's claim to recover benefits from a policy-funded plan is properly directed toward the actual insurer-administrator, Unum Life, it appears that a viable claim may yet be made out against UnumProvident. When Burchill's complaint is construed in accordance with the liberal notice pleading standard of Rule 8, it can be read to incorporate a "catchall" claim under ERISA section 1132(a)(3), seeking injunctive relief against UnumProvident for wrongfully exerting control over Unum Life's fiduciary duties. See Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 109-10 (1st Cir. 2002) (discussing [*8] the nature of ERISA section 1132(a)(3)). Although I recognize that Burchill's complaint recites only one count n6 and suggests in its introduction that it is limited to seeking only section 1132(a)(1)(B) relief, certain of her allegations and her plea for relief "sketch a scenario which, if subsequently fleshed out by means of appropriate facts, could support an actionable claim." Garrett, 295 F.3d at 105. Specifically, Burchill asserts that UnumProvident exerted ultimate control over plan administration but flouted the fiduciary obligations that arose as a result of such control. For this alleged ERISA violation, Burchill seeks traditional equitable (injunctive) remedies against both defendants in addition to the disability benefits allegedly due her.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n4 Burchill also characterizes UnumProvident as the "alter ego" of Unum Life, but this case does not involve allegations that Unum Life lacks the financial solvency to pay any judgment against it or that justification exists for the Court to pierce the corporate veil.

n5 Adkins was also a case in which the plaintiff conceded that the parent was not an ERISA fiduciary. 191 F. Supp. 2d at 958. Somewhat akin to both Adkins and the instant case was Sidou v. UnumProvident Corporation, 245 F. Supp. 2d 207 (D. Me. 2003), in which I addressed a pure claims benefit denial case that originally named UnumProvident as a co-defendant. The plaintiff in Sidou, however, terminated UnumProvident as a party when she filed her amended complaint.

[*9]

n6 The Court previously granted a motion to dismiss "Count II" of the former "Amended Class Action Complaint." That count purported to assert a due process claim under the United States Constitution. (Feb. 5, 2003 Order, Docket No. 16.) My understanding of the Court's prior Order is that it granted a dismissal of only the clearly abortive constitutional claim. I would characterize Burchill's new claim against UnumProvident as a claim for equitable relief that emerges from the

Page 4

substantive allegation that UnumProvident exercised control and ultimate decision making authority over plan administration.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Whether such a claim is precluded as a matter of law is something that UnumProvident has not addressed in its three-page motion/memorandum and I do not think it is a matter that the Court should reach sua sponte in the context of a motion to dismiss. I do note, however, that [HN6]the definition of an ERISA fiduciary includes one who "exercises any discretionary authority or discretionary control respecting management or disposition of its assets," Adkins, 191 F. Supp. 2d at 958 (quoting, [*10] 29 U.S.C. § 1002(21)(A)(1)) or has "authority to control and manage the operation and administration of the plan." Id. (quoting 29 U.S.C. § 1102(a)(1)). If UnumProvident assumed such authority and control over Unum Life's benefits administration, it may or may not be a fiduciary subject to an equitable ERISA claim. Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir. 1998) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."). Compare Reich v. Rowe, 20 F.3d 25, 26, 32 (1st Cir. 1994) (declining to impose ERISA's equitable remedies against non-fiduciary service provider "who knowingly participates in a fiduciary breach"). Given the nature of these allegations, it is my view that a summary judgment record should be developed and that the case against UnumProvident should not be dismissed out of hand.

**Conclusion**

Based upon the foregoing, I recommend that the court **DENY** UnumProvident's motion to dismiss.

June 27, 2003

Margaret J. Kravchuk

United States Magistrate Judge

3

Case 3:04-cv-30217-MAP   Document 9   Filed 02/14/2005   Page 14 of 19

2001 U.S. Dist. LEXIS 13258; 144 Lab. Cas. (CCH) P34,367; 82 Empl. Prac. Dec. (CCH) P40,962

PAMELA D. CAMPBELL v. MITRE CORPORATION

CIVIL ACTION NO. 98-11768-RWZ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2001 U.S. Dist. LEXIS 13258; 144 Lab. Cas. (CCH) P34,367; 82 Empl. Prac. Dec. (CCH) P40,962

June 1, 2001, Decided

**DISPOSITION:** [*1] Mitre's motion with respect to the merits of this count denied. Mitre's motion with respect to Count II allowed. Motion to limit the damage period for Counts I and IV on limitations grounds allowed. Motion for summary judgment as to the merits of Counts I and IV denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee filed suit charging defendant employer with violating the Massachusetts Equal Pay Act (MEPA), Mass. Gen. Laws ch. 93, §§ 102-103, the Massachusetts antidiscrimination statute, Mass. Gen. Laws ch. 151B, and the Federal Equal Pay Act (FEPA). The employer moved for summary judgment.

**OVERVIEW:** The limitation period on the employee's state antidiscrimination claim began to run at the latest August 15, 1997 when she gave her notice of resignation, when it was clear that she was aware of her claim. Because her complaint was not filed within six months of that date, her claim was barred. With respect to the statute of limitations on her MEPA claim, the employer argued that because she did not file her complaint until July 13, 1998, she could not collect damages for unequal pay for any period before one year prior to the day she filed suit, and the court agreed. As to her FEPA claim, she could claim damages for unequal pay back only to July 13, 1996, two years prior to the date of her complaint. Viewing the record in the employee's favor, as to the merits of her MEPA claim, material issues of fact existed as to whether she was paid less than men who performed jobs which shared important common characteristics with her own, and whose positions involved comparable skill, effort, responsibility and working conditions. As to the merits of her FEPA claim, there existed material issues of fact as to whether she was paid less than male counterparts.

**OUTCOME:** The employer's motion with respect to the state antidiscrimination statute was allowed, the motion to limit the damage period for the federal and state equal pay claims on limitations grounds was allowed, and the motion for summary judgment as to the merits of the federal and state equal pay claims was denied.

**CORE TERMS:** limitation period, continuing violation, statute of limitations, summary judgment, comparable, skill, unequal, issues of fact, six-month, wage, male, Massachusetts Equal Pay Act, prima facie case, begins to run, resignation, actionable, invoked, prong, duty, sex, began to run, Federal Equal Pay Act, equal pay, discriminatory conduct, gender discrimination, substantially equal, limitations period, discriminatory act, female employees, unlawful conduct

**LexisNexis(TM) Headnotes**

*Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Other Laws*

[HN1]Mass. Gen. Laws ch. 151B makes it an unlawful practice for an employer to discriminate against an employee in compensation or in terms, conditions or privileges of employment because of the employee's sex unless based upon on a bona fide occupational qualification. Mass. Gen. Laws ch. 151B, § 4. Chapter 151B allows complaining parties to pursue administrative remedies before the Massachusetts Commission Against Discrimination (MCAD) and to seek judicial relief, but in either case a party seeking relief under ch. 151B must file a complaint with the MCAD within six months after the alleged act of discrimination. Mass. Gen. Laws ch. 151B, § 5. Failure to comply with this requirement bars resort to the courts.

*Labor & Employment Law > Discrimination > Title VII*

[HN2]The continuing violation doctrine is typically invoked by plaintiffs who have filed complaints within the limitation period of some clearly actionable conduct, and hope to "reach back" to seek remedies for earlier discriminatory conduct with respect to which no timely complaint was filed. As normally understood, the continuing violation doctrine protects only individuals who are unaware that they are being discriminated against.

Case 3:04-cv-30217-MAP    Document 9    Filed 02/14/2005    Page 15 of 19

2001 U.S. Dist. LEXIS 13258; 144 Lab. Cas. (CCH) P34,367; 82 Empl. Prac. Dec. (CCH) P40,962

*Labor & Employment Law > Discrimination > Title VII*

[HN3]The "continuing effects" doctrine would allow discriminatory acts to be reached so long as their harmful effects continue to within six months of a complaint being filed. Federal courts have explicitly rejected the "continuing effects" doctrine.

*Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally*

*Labor & Employment Law > Discrimination > Title VII*

[HN4]In the context of a discrimination action, the limitations period begins to run when a plaintiff is aware that she has been the victim of an illegal discriminatory act. Massachusetts courts do enforce this rule in continuing violation cases. Where the conduct complained of is of a continuing nature, the limitations period begins when conduct with a degree of permanence triggers plaintiff's awareness of and duty to assert his or her rights.

*Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Other Laws*

[HN5]See Mass. Gen. Laws ch. 149, § 105A.

*Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Other Laws*

[HN6]Under the Massachusetts Equal Pay Act, Mass. Gen. Laws ch. 93, §§ 102-103, determining whether work being performed by male and female employees is of like or comparable character requires a two-part analysis: first, is the substantive content of the jobs at issue comparable; that is, do the duties of the jobs have important common characteristics? If yes, do the positions entail comparable skill, effort, responsibility and working conditions? If the answer to both inquiries is yes, then male and female employees in the positions must receive equal pay. To answer the first prong of the test requires an evaluation, from the viewpoint of an objectively reasonable person, of whether the substantive content of the positions, specifically the actual duties of each position, are sufficiently similar to make the jobs comparable.

*Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Other Laws*

[HN7]Mass. Gen. Laws ch. 149, § 105A mandates that any Massachusetts Equal Pay Act, Mass. Gen. Laws ch. 93, §§ 102-103, action be brought within one year after the date of the alleged violation.

*Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Other Laws*

[HN8]The Federal Equal Pay Act (FEPA), like the Massachusetts Equal Pay Act, Mass. Gen. Laws ch. 93, §§ 102-103, prohibits employers from discriminating in the payment of wages on the basis of sex. 29 U.S.C.S. § 206(d)(1). To establish a prima facie case under the FEPA, a plaintiff must show that her employer was subject to the FEPA, and that she was paid less than her male counterparts who were performing work requiring substantially equal skill, effort, and responsibility under similar working conditions. Once a plaintiff sets forth a prima facie case, the defendant must establish one of four affirmative defenses: that the wage discrepancy resulted from (i) a seniority system, (ii) a merit system, (iii) a system measuring earnings by quantity or quality of production, or (iv) a differential based on a factor other than sex. The FEPA requires that claims be brought within two years after the cause of action arises, unless the violation is "willful," in which case a three-year limitation period applies. 29 U.S.C.S. § 255(a).

*Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Other Laws*

[HN9]Recent cases applying the continuing violation doctrine in the Federal Equal Pay Act (FEPA) do not focus on reaching back to conduct outside the limitation period, but have instead focused on when FEPA causes of action accrue, thus starting the limitation clock. In that context, the cases find that unequal pay constitutes a continuing violation through the end of employment, so that the limitation period begins to run from that time. Thus, in the FEPA context, courts recognize something like the "continuing effects" doctrine.

*Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Other Laws*

[HN10]A defendant in a Federal Equal Pay Act action can prevail on summary judgment by showing that the plaintiff has failed as a matter of law to establish a prima facie case, or asserting one of the available affirmative defenses, and demonstrating that no genuine issue of material fact exists concerning whether the elements of the defense have been met.

**COUNSEL:** For PAULA D. CAMPBELL, Plaintiff: Howard I. Rosen, Newman & Newman, Boston, MA.

For THE MITRE CORPORATION, Defendant: Neil V. McKittrick, Hill & Barlow, A Professional Corp., Richard L. Alfred, Seyfarth Shaw, Boston, MA.

**JUDGES:** RYA W. ZOBEL, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** RYA W. ZOBEL

Case 3:04-cv-30217-MAP   Document 9   Filed 02/14/2005   Page 16 of 19

2001 U.S. Dist. LEXIS 13258; 144 Lab. Cas. (CCH) P34,367; 82 Empl. Prac. Dec. (CCH) P40,962

OPINION: MEMORANDUM OF DECISION

June 1, 2001

ZOBEL, D.J.

Plaintiff Pamela Campbell worked for Defendant Mitre Corporation from August, 1991 until September, 1997. She gave notice of her resignation August 15, 1997, and her last day of work was September 5, 1997. She filed a gender discrimination complaint with the Massachusetts Commission Against Discrimination on March 4, 1998. On July 13, 1998, Plaintiff filed suit in state court, charging Mitre with violating the Massachusetts Equal Pay Act (MEPA), M.G.L. c. 149, § 105A (Count I), the Massachusetts antidiscrimination statute, M.G.L. c. 151B (Count II), the Massachusetts [*2] Equal Rights Act, M.G.L. c. 93, §§ 102-103 (Count III), and the Federal Equal Pay Act (FEPA), 29 U.S.C. § 206(d)(1) (Count IV). Plaintiff subsequently waived Count III. Defendant removed the action to this court, and now moves for summary judgment on Counts I, II, and IV on the ground that all are time-barred and that Plaintiff cannot establish sufficient facts from which a fact finder could conclude that Defendant violated any of the statutes invoked.

**Count II M.G.L. c. 151B**

[HN1]Chapter 151B makes it an unlawful practice for an employer to discriminate against an employee in compensation or in terms, conditions or privileges of employment because of the employee's sex unless based upon on a bona fide occupational qualification. M.G.L. c. 151B, § 4. Chapter 151B allows complaining parties to pursue administrative remedies before the Massachusetts Commission Against Discrimination (MCAD) and to seek judicial relief, but in either case a party seeking relief under 151B must file a complaint with the MCAD within six months after the alleged act of discrimination. M.G.L. c. 151B, § 5; 804 CMR 1.10(2) (A complaint "may be filed . . . at any [*3] time within six months after the alleged unlawful conduct; provided, however, that the six-month requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature"). Failure to comply with this requirement bars resort to the courts. Christo v. Edward G. Boyle Ins. Agency, Inc., 402 Mass. 815, 816, 525 N.E.2d 643 (1988).

Plaintiff tendered her resignation from Mitre August 15, 1997, and her last day of work was September 5, 1997. Plaintiff filed her MCAD complaint March 4, 1998, six months from her last day of work. Mitre moves for summary judgment on the ground that Plaintiff failed to file her MCAD complaint within the six-month limitation period. Mitre's argument is that the limitation period began to run at the latest August 15, 1997, the day Plaintiff tendered her resignation, which was more than six months before Plaintiff filed her MCAD complaint.

Although they are not clearly delineated in her complaint, Plaintiff appears to offer two distinct arguments in opposition to Mitre's statute of limitations argument. Her first argument is that her March 4, 1998 MCAD [*4] complaint was timely because the six-month limitation period begins to run only when an employee has sufficient notice of the discriminatory act, Wheatley v. American Telephone & Telegraph Co., 418 Mass. 394, 398, 636 N.E.2d 265 (1994), and because her belief that she had been the victim of gender discrimination did not "culminate" until a conversation with Barbara Wolfinger in early 1998. That argument is untenable, however, as Plaintiff testified unequivocally in her deposition that she resigned from Mitre in August 1997 because she felt that she was being discriminated against. She therefore cannot rely upon Wheatley to establish her 1998 conversation with Wolfinger as the point from which the limitation period began to run.

Plaintiff's second argument is that the "continuing violation" doctrine embodied in 804 CMR 1.10(2) requires that the six-month limitation period be calculated from her last day of work, September 5, 1997. [HN2]The continuing violation doctrine is typically invoked by plaintiffs who have filed complaints within the limitation period of some clearly actionable conduct, and hope to "reach back" to seek remedies for earlier discriminatory [*5] conduct with respect to which no timely complaint was filed. See e.g., Keeler v. Putnam, 238 F.3d 5 (1st Cir. 2001); Mack v. A&P, 871 F.2d 179 (1st Cir. 1989); Rock v. Massachusetts Commission Against Discrimination, 384 Mass. 198, 424 N.E.2d 244 (1981). As normally understood, the continuing violation doctrine protects only individuals who are unaware that they are being discriminated against. Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998); Sabree v. United Brotherhood of Carpenters & Joiners Local No. 33, 921 F.2d 396, 402 (1st Cir. 1990).

Plaintiff does not seek to "reach back," however, but seeks instead to use the continuing violation doctrine to find actionable discriminatory conduct up to her last day of work, based upon the theory that the lower pay she received for that day's work as a result of earlier discrimination constituted actionable conduct from which the limitation period would then run. Though Plaintiff does not identify it as such, she invokes what has been called [HN3]the "continuing effects"

Case 3:04-cv-30217-MAP   Document 9   Filed 02/14/2005   Page 17 of 19

2001 U.S. Dist. LEXIS 13258; 144 Lab. Cas. (CCH) P34,367; 82 Empl. Prac. Dec. (CCH) P40,962

doctrine, which would allow discriminatory acts to be reached so long as their [*6] harmful effects continue to within six months of a complaint being filed. See, DeNovellis v. Shalala, 124 F.3d 298, 309-10 (1st Cir. 1997). Federal courts interpreting analogous Federal statutes have explicitly rejected the "continuing effects" doctrine, however, Id. at 309, and Plaintiff presents no authority suggesting that on the facts of this case a Massachusetts court would allow "continuing effects" reasoning to contradict the basic rule, enunciated in Wheatley, 418 Mass. at 397-98, that [HN4]the limitations period begins to run when a plaintiff is aware that she has been the victim of an illegal discriminatory act. Massachusetts courts do in fact enforce the Wheatley rule in continuing violation cases. See, e.g., Greaney v. Heritage Hosp., No. 95-2547, 1995 Mass. Super. LEXIS 98 (Dec. 28, 1995) ("Where the conduct complained of is of a continuing nature, . . . , the limitations period begins when conduct with a degree of permanence triggers plaintiff's awareness of and duty to assert his or her rights."). n1

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 In Lynn Teachers Union v. Massachusetts Commission Against Discrimination, 406 Mass. 515, 520-523, 549 N.E.2d 97 (1990) the Supreme Judicial Court upheld the MCAD's application of "continuing effects" reasoning in a 151B case. In that case, however, the "continuing effects" logic was not invoked to evade the Wheatley rule, as Plaintiff seeks to do, as the SJC noted specifically that the complainants had not formally learned of their injury until within the limitation period. Id. at 518-19 & n.3.

- - - - - - - - - - - - End Footnotes - - - - - - - - - -

[*7]

The limitation period on Plaintiff's claim began to run at latest August 15, 1997, when it is clear that she was aware of her claim. Because her MCAD complaint was not filed within six months of that date, her claim is barred. Mitre's motion with respect to Count II is therefore allowed on statute of limitations grounds, and I need not consider Mitre's motion with respect to the merits of Plaintiff's claim.

**Count I Massachusetts Equal Pay Act (MEPA)**

[HN5]The Massachusetts Equal Pay Act mandates that "No employer shall discriminate in any way in the payment of wages as between the sexes, or pay any person in his employ salary or wage rates less than the rates paid to employees of the opposite sex for work of like or comparable character, or work on like or comparable operations." M.G.L. c. 149, § 105A. The SJC has held that [HN6]determining whether work being performed by male and female employees is of "like or comparable character" requires a two-part analysis: first, is the substantive content of the jobs at issue comparable; that is, do the duties of the jobs have important common characteristics? If yes, do the positions entail comparable skill, effort, responsibility and working [*8] conditions? If the answer to both inquiries is yes, then male and female employees in the positions must receive equal pay. Jancey v. School Committee of Everett, 421 Mass. 482, 489-490, 658 N.E.2d 162 (1995) (Jancey I). To answer the first prong of the test requires an evaluation, from the viewpoint of an objectively reasonable person, of whether the "substantive content of the positions, specifically the actual duties of each position," are sufficiently similar to make the jobs comparable. Jancey v. School Committee of Everett, 427 Mass. 603, 606, 695 N.E.2d 194 (1998) (Jancey II). [HN7]M.G.L. c. 149, § 105A mandates that any MEPA action be brought "within one year after the date of the alleged violation." Mitre bases its motion for summary judgment on this Count upon the relevant limitation period, as well as the substance of the claim.

With respect to the statute of limitations, Mitre argues that because Plaintiff did not file her state court complaint until July 13, 1998, she cannot collect damages for unequal pay for any period before July 13, 1997, one year prior to the day she filed suit. Given that Plaintiff only worked at Mitre until [*9] September 5, 1997, enforcement of MEPA's one-year statute of limitations in that manner would drastically reduce her claim.

Plaintiff offers no Massachusetts authority directly countering Mitre's statute of limitations argument, but instead cites McMillan v. Mass. Soc. Prev. of Cruelty to Animals, 140 F.3d 288 (1st Cir. 1998) and Jancey I for the proposition that the Massachusetts antidiscrimination and equal pay rules may be more liberal than the FEPA, which she argues "permits the continuing violation doctrine." The continuing violation doctrine does not, however, allow her FEPA claim to reach back beyond the statutory limitation period. Defendant's motion is therefore allowed with respect to the MEPA limitation period.

With respect to Mitre's motion on the merits, summary judgment in Mitre's favor will be proper if it can show that no material issues of fact exist concerning whether the jobs at issue have important common

Page 4

Case 3:04-cv-30217-MAP   Document 9   Filed 02/14/2005   Page 18 of 19

2001 U.S. Dist. LEXIS 13258; 144 Lab. Cas. (CCH) P34,367; 82 Empl. Prac. Dec. (CCH) P40,962

characteristics, prong one of MEPA's comparability test, Mullenix v. Forsyth Dental Infirmary for Children, 965 F. Supp. 120, 147-48 (D. Mass. 1996), or whether the jobs "entail comparable skill, effort, responsibility, and [*10] working conditions," Id. at 148 (citing Jancey I, 421 Mass. at 490), prong two of MEPA's comparability test.

Viewing the record in Plaintiff's favor, material issues of fact do exist as to whether she was paid less than men at Mitre who performed jobs which shared important common characteristics with her own, and whose positions involved comparable skill, effort, responsibility and working conditions. Mitre's motion with respect to the merits of this count is, therefore, denied.

**Count IV Federal Equal Pay Act (FEPA)**

[HN8]The Federal Equal Pay Act (FEPA), like MEPA, prohibits employers from discriminating in the payment of wages on the basis of sex. 29 U.S.C. § 206(d)(1). It uses somewhat different standards, however. To establish a prima facie case under the FEPA, "a plaintiff must show that her employer was subject to the Act, and that she was paid less than her male counterparts who were performing work requiring substantially equal skill, effort, and responsibility under similar working conditions." LeGoff v. Trustees of Boston Univ., 23 F. Supp. 2d 120, 125 (D. Mass. 1998) (quoting McMillan, 140 F.3d at 298). [*11] Once a plaintiff sets forth a prima facie case, the defendant must establish one of four affirmative defenses: that the wage discrepancy resulted from (i) a seniority system, (ii) a merit system, (iii) a system measuring earnings by quantity or quality of production, or (iv) a differential based on a factor other than sex. Mullenix, 965 F. Supp. at 139-140 (citing Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995)). The FEPA requires that claims be brought within two years after the cause of action arises, unless the violation is "willful," in which case a three-year limitation period applies. 29 U.S.C. § 255(a). Mitre moves for summary judgment on statute of limitations grounds, as well as on the merits of Plaintiff's claim.

With respect to the statute of limitations, Mitre argues that because Plaintiff filed her state court action July 13, 1998, any claims she might have for unequal pay prior to July 13, 1996 are time-barred. In response Plaintiff invokes the continuing violation doctrine to argue that she should be able to seek damages dating back to her initial hiring by Mitre, because she believes her unequal pay began [*12] then and continued throughout her employment.

Unlike the continuing violation cases discussed in connection the Plaintiff's 151B claim (Count II), [HN9]recent cases applying the continuing violation doctrine in the FEPA context have not focused on reaching back to conduct outside the limitation period, but have instead focused on when FEPA causes of action accrue, thus starting the limitation clock. See, Cheng v. IDEAssociates, Inc., 2000 U.S. Dist. LEXIS 10517, No. 96-11718-PBS (D. Mass. July 6, 2000); LeGoff, 23 F. Supp. 2d 120. In that context, the cases have found that unequal pay constitutes a continuing violation through the end of employment, so that the limitation period begins to run from that time. Cheng, 2000 U.S. Dist. LEXIS 10517, at *21; LeGoff, 23 F. Supp. 2d at 126. Thus, in the FEPA context, courts recognize something like the "continuing effects" doctrine, but this does not settle the question of how far back a plaintiff with a timely complaint can reach in seeking remedies. Cheng and LeGoff also contain language suggesting that the continuing violation doctrine may allow a FEPA plaintiff to seek [*13] damages for the entire period of employment, regardless of the limitation period, and cite expansive language from the First Circuit to the effect that "a decision to hire an individual at a discriminatorily low salary can, upon payment of each subsequent paycheck, continue to violate the employee's rights," E.E.O.C. v. McCarthy, 768 F.2d 1, 3-4 (1st Cir. 1985) (quoting Lamphere v. Brown Univ., 685 F.2d 743, 747 (1st Cir. 1982)). Neither McCarthy nor Lamphere directly confront the question of back pay, however, and McCarthy upheld a district court decision which treated the applicable FEPA limitation period as providing the outer limit on how far back the plaintiff could reach in claiming back pay damages, even though the pay disparity at issue began earlier. E.E.O.C. v. McCarthy, 578 F. Supp. 45, 49 (D. Mass. 1983). See also, Smallwood v. Liberty Mutual Ins. Co., 2000 DNH 57, 2000 U.S. Dist. LEXIS 2624, at *57, No. 98-351-B (D. N.H. Mar. 6, 2000) (citing Pollis v. New School for Social Research, 132 F.3d 115, 118-19 (2nd Cir. 1997)).

As Plaintiff cites no persuasive authority challenging [*14] this established application of the FEPA limitation period, and does not argue that Mitre willfully violated the FEPA, I find that FEPA's two year limitation period means that Plaintiff may claim damages for unequal pay back only to July 13, 1996, two years prior to the date of her complaint. Mitre's motion on statute of limitations grounds is therefore allowed.

Defendant also moves for summary judgment on the merits of Plaintiff's FEPA claim. [HN10]A defendant in a FEPA action can prevail on summary judgment by showing that the plaintiff has failed as a matter of law

to establish a prima facie case, Mullenix, 965 F. Supp. at 140-41, or asserting one of the available affirmative defenses, and demonstrating that no genuine issue of material fact exists concerning whether the elements of the defense have been met. Id. at 141.

Viewing the record in Plaintiff's favor, there do exist material issues of fact as to whether she was paid less than male counterparts who were performing work requiring substantially equal skill, effort, and responsibility under similar working conditions. In addition, material issues of fact exist concerning whether Mitre has established [*15] any of the affirmative defenses available to FEPA defendants. Mitre's motion with respect to the merits of this count is therefore denied.

Mitre's motion with respect to Count II is allowed. The motion to limit the damage period for Counts I and IV on limitations grounds is allowed. The motion for summary judgment as to the merits of Counts I and IV is denied.

DATE

RYA W. ZOBEL

UNITED STATES DISTRICT JUDGE